Calvin JONES, Petitioner–Appellant,

v.

A.A. GOMEZ, Warden, and John K. Van De Kamp, Respondents–Appellees.

No. 94–16265.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 1995.

Decided Sept. 15, 1995.

200

Ann C. McClintock, Assistant Federal Public Defender, Sacramento, CA, for petitioner-appellant.

Arnold O. Overoye, Assistant Attorney General, Sacramento, CA, for respondents-appellees.

Before HALL, WIGGINS, and LEAVY, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Calvin Jones appeals the district court's denial of his petition for a writ of habeas corpus. In this court, Jones presses three issues he argues entitle him to habeas relief: (1) racial discrimination in the prosecutor's exercise of peremptory challenges; (2) failure of the prosecution to disclose *Brady* material; and (3) ineffective assistance of trial counsel. We review the district court's denial of habeas relief de novo. *Sanders v. Ratelle*, 21 F.3d 1446, 1451 (9th Cir.1994). We affirm.

## FACTS

In 1983, Jones was convicted in California state court of the 1973 first degree murder of Jones's business partner, Anthony Virgilio. Jones was charged together with a codefendant, Rosalio Estrada. When the trial began, both Jones and Estrada were still in the case; some time after jury selection was completed, however, the state dismissed the charges against Estrada.

The most difficult issue involved in this appeal concerns events that took place during jury selection. Jones is African American and Estrada is Hispanic. Estrada objected to the prosecution's exercise of peremptory challenges against one African American venireperson and three Hispanic venirepersons. Jones joined in the motion, which was brought under *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978), California's precursor to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The state trial court heard extensive argument on the *Wheeler* motion and later issued a written opinion. Although the prosecution proferred several facially race-neutral reasons for each of the peremptory challenges at issue, the trial judge was clearly troubled by the prosecutor's apparently racial motivations. Nevertheless, the trial court declined to "totally disregard" the prosecutor's race-neutral explanations for the strikes, and ultimately denied the motion. The California Court of Appeal, in a written disposition, found substantial evidence to support the

trial court's finding that the peremptory challenges were not solely race-based. The California Supreme Court denied direct review.

Jones's conviction became final when the United States Supreme Court denied his petition for a writ of certiorari, on October 6, 1986. The present habeas corpus action was commenced in the district court in December 1990. The district court denied the petition and Jones appeals.

## DISCUSSION

1. *Racial discrimination during jury selection.*

Jones contends that his conviction must be set aside because the prosecutor exercised peremptory strikes against potential jurors, including one African American and three Hispanics, in a racially discriminatory manner, in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). *Batson* held that an African American defendant stated an Equal Protection claim based on allegations that the prosecutor at his trial had exercised peremptory strikes in a manner allegedly intended to prevent any African Americans from serving on the petit jury. 476 U.S. at 96–98, 106 S.Ct. at 1722–24. Five years later, *Powers* held that a *Batson*-based Equal Protection claim did not require racial identity between the defendant and the venirepersons allegedly discriminated against by the prosecutor's used of peremptory challenges. 499 U.S. at 406, 111 S.Ct. at 1368.

(a) *African American venireperson*

Jones, who is African American, can challenge the removal of the African American venireperson under *Batson* itself, which involved same-race challenges. *Batson* was decided by the Supreme Court on April 30, 1986, approximately five months before Jones's conviction became final on direct appeal. We therefore apply *Batson* retroactively on collateral review to Jones's claim regarding the African American potential juror. *See Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989) (plurality opinion).

■ Under *Batson* and its progeny, courts apply a three-step analysis to claims of racial discrimination in the exercise of peremptory challenges:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991) (plurality opinion) (citations omitted). The Supreme Court's recent decision in *Purkett v. Elem,* —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), is particularly instructive because the Court made clear that the prosecution is not required to put forth race-neutral reasons that are "persuasive, or even plausible." *Id.* at ——, 115 S.Ct. at 1771. Instead, the explanations must simply be nondiscriminatory. *Id.* *Elem* also confirmed that the trial court's finding at the third step of the *Batson* analysis, the ultimate determination of whether the prosecutor acted with discriminatory intent, is a question of fact "which turn[s] primarily on an assessment of credibility." *Id.* at ——, 115 S.Ct. at 1772.

■ With respect to the one African American venireperson at issue in the present case, the district court properly applied the presumption of correctness of state court factual findings, 28 U.S.C. § 2254(d), and found the state trial court's ultimate finding of no racial discrimination against this potential juror to be amply supported by the record. The prosecutor explained at the *Wheeler* hearing in the trial court that he had exercised the strike against this potential juror because she had expressed reluctance to serve, had a son-in-law who had committed murder, and had two children employed by the California Department of Corrections, for whose safety she feared should she vote to convict Jones. As the trial court and California Court of Appeal noted, these reasons may

have been enough to support a challenge for cause.

We note that the trial court, while finding the issue to be a close one, answered the ultimate question of discriminatory intent in the negative, after a comprehensive hearing and full written findings. The California Court of Appeal affirmed. The district court agreed. Based upon our review of the record, and in light of the concordance of these three other courts, we decline to upset the trial court's findings.

### (b) *Hispanic venirepersons*

As to the three Hispanic potential jurors, the district court found that Jones's discrimination claim could only be brought under *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), in which the Supreme Court first applied an Equal Protection analysis to a cross-racial challenge. *Powers* was decided in 1991, well after Jones's conviction became final on direct appeal. The district court concluded that *Powers* announced a new rule of law and could not therefore be applied retroactively to Jones's case on collateral review. *See, e.g., Teague,* 489 U.S. at 310, 109 S.Ct. at 1075 (plurality opinion).

■■■ The applicability of *Teague*'s prohibition against retroactive operation of new rules of law on collateral review is a threshold issue which we must address before reaching the merits of a claim. *Caspari v. Bohlen,* —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) (citing *Graham v. Collins,* —— U.S. ——, ——, 113 S.Ct. 892, 894, 122 L.Ed.2d 260 (1993)). We agree with the district court that *Powers* announced a new rule from which Jones may not benefit on collateral review.

■■■ To decide whether a habeas petitioner seeks application of a new rule, we must "[s]urvey[ ] the legal landscape" as it existed when the petitioner's conviction became final on direct appeal. *Graham,* —— U.S. at ——, 113 S.Ct. at 898. A rule is "new" for *Teague* purposes if it was not "*dictated* by precedent existing at the time the defendant's conviction became final." *Id.* at ——, 113 S.Ct. at 897 (quoting *Teague,* 489

U.S. at 301, 109 S.Ct. at 1070). Put another way, the "question is whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Goeke v. Branch,* —— U.S. ——, ——, 115 S.Ct. 1275, 1277, 131 L.Ed.2d 152 (1995) (per curiam) (internal quotations and citations omitted).

On the date Jones's conviction became final, October 6, 1986, the most important landmark on the "legal landscape" we must survey was *Batson* itself. *Batson* is indisputably consistent with the cross-racial standing rule which Jones seeks to invoke. *See Powers,* 499 U.S. at 416, 111 S.Ct. at 1373 ("The emphasis in *Batson* on racial identity between the defendant and the excused prospective juror is not inconsistent with our holding today that race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges."). We cannot say, however, that in 1986 *Batson* "dictated" or "compelled" the rule later adopted by the Supreme Court in *Powers.*

The specificity with which the Supreme Court spelled out the scope of its holding in *Batson* is almost conclusive of our inquiry into whether a *Powers*-type cross-racial challenge was compelled by 1986 case law. The Court stated that to establish a claim of purposeful discrimination in jury selection, "the defendant must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (citation omitted). Taken at face value, this language strongly suggested that *Batson* applied only to same-race claims.

*Batson* did not, of course, expressly exclude the possibility, eventually recognized five years later in *Powers,* that cross-racial challenges would be permitted. Jones thus argues that despite the fact that *Batson* spoke only in terms of same-race discrimination claims, *Powers* was not a significant innovation in the Supreme Court's jurisprudence regarding discrimination in jury selection. Instead, he contends, *Powers* simply

applied "well-established principles of standing," *Powers*, 499 U.S. at 402, 111 S.Ct. at 1366, to allow a criminal defendant to vindicate the Equal Protection rights of potential jurors of all races, rather than just those of the defendant's race. Jones notes that *Powers*'s discussion of third-party standing relied upon well-established, older standing cases such as *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), and *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Thus, Jones concludes, *Powers* was dictated by the combination of *Batson* and the pre-*Batson* standing cases relied upon by the Court in *Powers*.

We cannot agree. To begin with, we disagree with Jones's characterization of *Powers* as a simple combination of *Batson* and the third-party standing cases. Justice Kennedy's majority opinion in *Powers* expressly recognized that the Equal Protection violation at issue in *Batson* was largely based on the harm to the *defendant* when members of his own race were excluded from the petit jury. *Powers*, 499 U.S. at 406, 111 S.Ct. at 1368.

Noting, however, that "*Batson* 'was designed "to serve multiple ends," ' only one of which was to protect individual defendants from discrimination in the selection of jurors," *id.* (quoting *Allen v. Hardy*, 478 U.S. 255, 259, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) (per curiam) quoting *Brown v. Louisiana*, 447 U.S. 323, 329, 100 S.Ct. 2214, 2220, 65 L.Ed.2d 159 (1980)), *Powers* shifted the focus of the Equal Protection analysis. Under *Powers*, the relevant harm caused by the prosecutor's discriminatory conduct is harm to the *prospective juror*, rather than the defendant:

> We hold that the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race, a practice that forecloses a significant opportunity to participate in civic life. An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right

not to be excluded from one on account of race.

*Id.*, 499 U.S. at 409, 111 S.Ct. at 1370. In fact, it was precisely this shift in focus, from the rights of the defendant to the rights of prospective jurors, that necessitated the Court's discussion of the third party standing cases on which Jones relies. *See id.* at 410, 111 S.Ct. at 1370 ("We must consider whether a criminal defendant has standing to raise the equal protection rights of a juror excluded from service in violation of these principles."). Given this shift, from *Batson* to *Powers*, we are unable to find that a reasonable jurist would have concluded in 1986 that *Batson* compelled or dictated the result in *Powers*.

█ Even assuming that Jones is correct in his assertion that *Powers* represented a straightforward application of *Batson* and the third-party standing cases, we would still find that it announced a new rule. The Court has noted that the fact that a case falls "within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision," *Butler v. McKellar*, 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990), is not the same as saying that it is "dictated" or "compelled" by precedent for *Teague* purposes. We agree that *Powers* was not a radical break from precedent, such as that which occurs when a case is overruled. *See Graham*, —— U.S. at ——, 113 S.Ct. at 897 ("there can be no dispute that a decision announces a new rule if it expressly overrules a prior decision"). Nevertheless, even if *Powers*'s combination of *Batson* and the earlier standing cases was not revolutionary, we cannot say that it "was merely an application of the principle[s] that governed" the Court's decisions in the earlier cases, *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073, such that it was dictated or compelled by precedent. It was not.

Several post–1986 developments in the legal landscape reinforce our conclusion that *Powers* announced a new rule of constitutional law. First, in a case decided only a half-year after Jones' conviction became final on direct review, this court strongly suggested that *Batson* did not apply to cross-racial challenges. In *United States v. Vaccaro*, 816

F.2d 443 (9th Cir.1987), we considered a *Batson*-type challenge by white defendants to the allegedly discriminatory exclusion of African American venirepersons. We first concluded that the defendants had not made out a prima facie showing that the prosecutor had discriminated. *Id.* at 457. After noting *Batson*'s specific reference to racial identity between the defendant and the potential jurors who are the object of possible discrimination, we observed, as an alternate holding, that because none of the defendants in *Vaccaro* was black, "under *Batson,* they could not have made out a prima facie case of discrimination in juror selection in any event." *Id.*

Our assumption in *Vaccaro* that *Batson* applied only to same-race challenges eventually proved to be wrong. Regardless, however, a panel of this court concluded, at roughly the time Jones's conviction became final, that *Batson* did not apply to cross-racial challenges; this strongly supports our conclusion that reasonable jurists would not have felt compelled to reach the opposite conclusion.

We draw support for our decision, as well, from our sister circuits. The three courts of appeals that have considered the same question we decide today have all concluded that *Powers* announced a new rule of law. *See Farrell v. Davis,* 3 F.3d 370, 372 (11th Cir. 1993); *Echlin v. LeCureux,* 995 F.2d 1344, 1347–51 (6th Cir.1993); *Holland v. McGinnis,* 963 F.2d 1044, 1052–55 (7th Cir.1992). We do not lightly create a conflict with other circuits, and see no reason to do so here.

■ The fact that Jones's Hispanic codefendant, Estrada, was still in the case when jury selection took place, has no effect on our analysis. Had Estrada been convicted, he might have been able to challenge the strikes of the three Hispanic venirepersons under *Batson.* We review Jones's claim, however, from the perspective of Jones himself; because he is African American, his challenge to the exclusion of the Hispanic jurors is limited to a *Powers*-type claim, rather than a plain *Batson* one.

In sum, we hold that *Powers v. Ohio* announced a new rule of constitutional law.

Neither of the "two narrow exceptions" to the *Teague* nonretroactivity principle applies. *Caspari,* —— U.S. at ——, 114 S.Ct. at 956. *Powers* certainly did not "place 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id.* (quoting *Teague,* 489 U.S. at 307, 109 S.Ct. at 1073). Nor did it announce a "'watershed rule[ ] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* (quoting *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990)). The Supreme Court held that *Batson* itself should not be given retroactive effect on collateral review. *Allen,* 478 U.S. at 261, 106 S.Ct. at 2881. *Powers* was not so fundamental an innovation that it requires different treatment.

Accordingly, because Jones's conviction became final on direct review long before *Powers* was decided, he cannot claim the benefit of its application on collateral review. Therefore, the district court properly dismissed Jones's claims concerning discrimination against the three Hispanic venirepersons.

### 2. *Failure to disclose* Brady *material.*

■ Jones next contends that the prosecution's failure to disclose the arrest record of one its trial witnesses violated the requirement of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the defense be provided with exculpatory evidence in the prosecution's possession. Failure by the prosecution to disclose the arrest record of its witness would require a new trial "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). It is well-settled that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg,* 24 F.3d 20, 26 (9th Cir.1994). The district court noted that Jones's *Brady* claim was argued in a single page, "[w]ithout reference to the record or any document." [1]

1. We note that Jones nowhere identifies the con-

tents of the witness's supposed "felony arrest

Jones's conclusory allegations did not meet the specificity requirement. The district court therefore did not err in denying habeas relief on this ground.

### 3. *Ineffective assistance of counsel.*

■ We also agree with the district court that Jones's conclusory suggestions that his trial and state appellate counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation. *Id.* Nor did the district court abuse its discretion in concluding that Jones's bald assertions of ineffective assistance did not entitle him to an evidentiary hearing. *See Greyson v. Kellam,* 937 F.2d 1409, 1412 (9th Cir.1991). The district court did not err in denying habeas relief on the ineffective assistance claims.

The judgment of the district court is AFFIRMED.

---

record." No relevant document appears in the Excerpt of Record, despite the clear requirements of Ninth Circuit Rule 30–1.2. Nor does our review of the voluminous district court record reveal what arrests or convictions, if any, the witness has suffered.

