113 F.3d 1243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisco FIDEL-MARTINEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alejandro VARGAS-HERNANDEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvaro DOMARCO-SANCHEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Manuel ARCINIEGA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus ROSALES-CEJA, Defendant-Appellant.
 Nos. 95-10461, 95-10462, 95-10467, 95-10536 and 96-10013.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 16, 1997.*
Submitted April 16, 1997.**
Decided April 28, 1997.
 
 Before: WIGGINS, NOONAN and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 FACTS
 
 2
 On approximately July 1, 1994 a confidential informant (CI) met Ramon Rodriguez who agreed to introduce the CI to his brother-in-law, Jose Manuel Arciniega (Arciniega), for the purpose of engaging in drug transactions. Between July 3 and July 12, the CI and Arciniega spoke numerous times over the telephone about Arciniega supplying the CI with heroin and methamphetamine.
 
 
 3
 On July 12, the CI and Arciniega agreed to meet at Coco's restaurant at 4:30 PM. Arciniega arrived in a yellow car driven by Jesus Rosales-Ceja (Rosales-Ceja) and were later joined by Alavaro Domarco-Sanchez (Domarco-Sanchez), Francisco Fidel-Martinez (Fidel-Martinez) and Alejandro Vargas-Hernandez (Vargas-Hernandez) who arrived in a truck driven by Vargas-Hernandez. Arciniega and Domarco-Sanchez stated that Domarco-Sanchez was the owner of the drugs. Domarco-Sanchez instructed Rosales-Ceja to show the CI a sample of the drugs. After the CI approved of the sample, Rosales-Ceja put the sample into his pocket and Domarco-Sanchez then sent Vargas-Hernandez and Fidel-Martinez to get the rest of the drugs. Vargas-Hernandez and Fidel-Martinez returned to Coco's in a different car. Vargas-Hernandez showed five packages, located behind the driver's seat of the car containing approximately 2,207 grams of methamphetamine, to the CI. All five defendants were arrested. Fidel-Martinez attempted to flee, but was caught. A loaded .25 caliber Raven pistol was found on him. A loaded .22 caliber Jennings pistol was taken from Vargas-Hernandez's waistband. Rosales-Ceja was arrested with the sample of methamphetamine in his pocket.
 
 PROCEEDINGS
 
 4
 On July 15, 1994, the five defendants were indicted for conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(6) and 846 and possession with intent to distribute methamphetamine in violation of § 841(a)(1). A superseding indictment was filed on September 2 adding a third count of use and carrying a firearm in the commission of a drug offense in violation of 18 U.S.C. § 924(c).
 
 
 5
 On July 11, 1995, during voir dire, the government exercised one of its peremptory challenges in striking prospective juror Enrique Gutierrez, a news photographer who had previously covered criminal court cases. The district court denied defense counsel's objection that the government's use of the peremptory challenge was not race neutral.
 
 
 6
 The jury began its deliberations on the afternoon of July 20, 1995. At 2:30 PM on Friday, July 21, the jury sent a note to the court explaining that the jury might not finish deliberating by 5 PM and that two jurors have prearranged vacations beginning on July 22 and July 23. The court responded by note to the jury: "Let us know if or when you make that determination." At 4:30 PM the jury sent a second note stating that they would not finish deliberations by 5 PM and one juror needs to leave at 5 PM for an appointment. The court called in the jury and, over the objections of defense counsel, allowed further deliberations that evening. Without first consulting with counsel, the court answered three questions from the foreperson as to how to proceed.
 
 
 7
 After the jury exited the courtroom, defense counsel objected to the coercive effect on the jury and that the court's "preference" that the jury continue deliberating was a de facto Allen charge. The district court denied the defendants' motion for mistrial. Arciniega's counsel also objected to defense counsel not being given an opportunity to be heard prior to the court's instructions to the jury.
 
 
 8
 The jury returned guilty verdicts as to all three counts as to Fidel-Martinez, Domarco-Sanchez and Vargas-Hernandez and as to Arciniega for counts one and two. The jury failed to render verdicts on count three as to Arciniega and as to all counts for Rosales-Ceja. The third count for Arciniega was eventually dismissed on the government's motion. Rosales-Ceja was retried and the jury found him guilty on counts one and two. Count three was ultimately dismissed.
 
 
 9
 I. THE DISTRICT COURT DID NOT ERR BY DENYING FIDEL-MARTINEZ'S, VARGAS-HERNANDEZ'S, DOMARCO-SANCHEZ'S AND ARCINIEGA'S MOTIONS FOR MISTRIAL
 
 
 10
 The district court's findings of fact as to the racially discriminatory use of peremptory challenges are reviewed for clear error. United States v. Koon, 34 F.3d 1416, 1439-40 (9th Cir.1994), rev'd in part on other grounds, 116 S.Ct. 2034 (1996).
 
 
 11
 Under Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny, a claim of discrimination in the use of peremptory challenges is assessed under a three-step analysis. Jones v. Gomez, 66 F.3d 199, 201 (9th Cir.1995), cert. denied, 116 S.Ct. 1437 (1996). First, the defendant must make a prima facie showing that the prosecutor exercised the peremptory challenge on the basis of race. Jones, supra at 201.
 
 
 12
 Second, if a prima facie case is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror. Jones, 66 F.3d at 201. The explanation need not be plausible; it need only be facially valid. Purkett v. Elem, 115 S.Ct. 1769, 1771 (1995). " 'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " Purkett, supra at 1771.
 
 
 13
 Third, if the prosecutor meets his burden, the trial court must determine whether the defendant has met his burden of persuasion in proving purposeful discrimination. Jones, 66 F.3d at 201. It is only at the third stage that the persuasiveness of the prosecutor's explanation becomes relevant. Purkett, supra. However, at the third stage, the burden of persuasion rests on the opponent of the peremptory challenge. Id. The trial court's determination at the third stage "is a question of fact 'which turn[s] primarily on an assessment of credibility.' " Jones, 66 F.3d at 201. " '[T]he ultimate inquiry for the judge is not whether counsel's reason is suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based.' " Koon, 34 F.3d at 1442 (citation omitted). As to the issue of credibility, " 'the best evidence will often be the demeanor of the attorney who exercises the challenge.' " Id. at 1441-42 (citations omitted).
 
 
 14
 The defendants argue that the neutral explanation offered by the government was incredible. At the second stage, however, Purkett 's standard of facial validity, not credibility, is dispositive. The defendants have not met their burden of persuasion of showing discriminatory intent at the third stage. The district court's determination that the explanation was credible does not amount to clear error. See Koon, 34 F.3d at 1439-40.
 
 
 15
 II. AS TO VARGAS-HERNANDEZ, DOMARCO-SANCHEZ AND ARCINIEGA, THE DISTRICT COURT DID NOT ERR IN GIVING ITS SUPPLEMENTAL JURY INSTRUCTION
 
 
 16
 The trial court's issuance of an Allen charge "must be upheld unless it is clear from the record that the charge had an impermissibly coercive effect on the jury." United States v. Hernandez, 105 F.3d 1330, 1333 (9th Cir.1997)
 
 
 17
 In an Allen charge or de facto Allen charge, the court "instructs the jurors to work towards unanimity and the minority to reexamine its views," Jiminez v. Myers, 40 F.3d 976, 980 (9th Cir.1993) (citing Allen v. United States, 164 U.S. 492 (1896)), when the jury is deadlocked in its deliberations, Wills, 88 F.3d at 716. The same standard applies in assessing an instruction regardless of whether the district court gave the jury an Allen charge, a de facto Allen charge or a supplemental jury instruction. Compare United States v. Estacio, 64 F.3d 477, 482 (9th Cir.1995) (four factor test applied to non-Allen charge), cert. denied, 116 S.Ct. 1356 (1996), with United States v. Wauneka, 842 F.2d 1083, 1088 (9th Cir.1988) (same test applied to Allen charge). Therefore, little turns on how the district court's instruction is categorized.
 
 
 18
 The " 'general test of whether a supplemental jury instruction is in error is to consider all the circumstances to determine if the instruction was coercive.' " Jiminez, 40 F.3d at 980. More specifically, four factors are considered in assessing the coerciveness of supplemental instructions: 1) the form of the jury charge, 2) the amount of time of deliberation following the charge, 3) the total time of deliberation and, 4) other indicia of coerciveness or pressure. Wills, 88 F.3d at 717.
 
 
 19
 As to the first factor, Domarco-Sanchez and Arciniega's argument that the district court failed to counterbalance its statements to the jury with instructions to the jury "not to surrender their sincere convictions" is unpersuasive. Such an instruction was unnecessary since the jury was not deadlocked and the court was merely inquiring of the jury's ability to stay that evening to deliberate. Moreover, the district court did issue a cautionary instruction: "[N]othing I say or do is intended to suggest what your verdict should be...."
 
 
 20
 As to the second factor, four hours of subsequent deliberations refutes any claim of coercion. See Estacio, 64 F.3d at 482 (1 and 1/4 hours not coercive); United States v. Lorenzo, 43 F.3d 1303, 1307 n. 3 (9th Cir.1995) (5 and 1/2 hours not coercive); United States v. Ajiboye, 961 F.2d 892, 894 (9th Cir.1992) (2 days not coercive).
 
 
 21
 None of the parties address the third factor.
 
 
 22
 Vargas-Hernandez and Arciniega's argument, as to the fourth factor, that the district court informing the jury of its "preference" that they continue deliberating was coercive is unavailing. The jurors themselves requested the opportunity to continue deliberations that evening. Also, that the jury failed to reach verdicts on four of the 15 counts rebuts the claim that the jury was coerced into delivering guilty verdicts.
 
 
 23
 The defendants have neither met their burden in showing coercion under the four-factor test, see Wills, 88 F.3d at 717, nor have they shown that it is clear that the instruction had a coercive effect on the jury, see Hernandez, 105 F.3d at 1333.
 
 
 24
 III. AS TO FIDEL-MARTINEZ, DOMARCO-SANCHEZ AND ARCINIEGA, THE DISTRICT COURT DID NOT ERR BY COMMUNICATING WITH THE JURY DURING DELIBERATIONS WITHOUT PRIOR CONSULTATION WITH COUNSEL
 
 
 25
 The district court's failure to provide a defendant an opportunity to be heard before answering questions from the jury is reviewed de novo. See United States v. Throckmorton, 87 F.3d 1069, 1072 (9th Cir.1996), cert. denied, 117 S.Ct. 993 (1997). If a defendant timely objects, the government bears the burden of showing that it was harmless beyond a reasonable doubt. Id.
 
 
 26
 The defendants argue that the district court answered oral questions from the jury without first consulting with counsel denying their opportunity to be heard under Throckmorton, 87 F.3d at 1072 (district court's ex parte communication with jury outside of the presence of counsel denied defendants the opportunity to be heard). We need not decide whether the district court erred under Throckmorton because any claimed error is harmless.
 
 
 27
 The government argued that the effect of the district court's challenged answers to the jury were not prejudicial or coercive. As discussed in the previous section, the challenged statement was not coercive. The government also argued that the court would not have changed its comments even if it had consulted with defense counsel. With one exception (the district court's use of preference rather than option), the government is correct. In any event, any changes in the district court's statements to the jury would not have affected the verdict. The government has satisfied its burden in showing that the error was harmless beyond a reasonable doubt. See Throckmorton, 87 F.3d at 1072.
 
 
 28
 IV. AS TO VARGAS-HERNANDEZ, FIDEL-MARTINEZ AND DOMARCO-SANCHEZ, THE DISTRICT COURT DID NOT ERR IN INSTRUCTING THE JURY REGARDING § 924(c)
 
 
 29
 Whether a district court misstates elements of a statutory crime is a question of law reviewed de novo. United States v. Tagalicud, 84 F.3d 1180, 1183 (9th Cir.1996). Under the "solid wall of circuit authority test," the standard of review is for harmless error despite the defendants' failure to object contemporaneously to the jury instructions. See United States v. Lopez, 100 F.3d 98, 103, 103 n. 10 (9th Cir.1996) (citation omitted).
 
 
 30
 The defendants argue that the district court erred in its jury instruction regarding the use or carrying of a firearm in violation of 18 U.S.C. §§ 924(c)(1) and 2. In light of Bailey v. United States, 116 S.Ct. 501, 509 (1995) (use denotes active employment and not mere possession or proximity), the defendants assert that the instruction regarding use is erroneous and lacked an explanation of carrying. While the government concedes that the portion on use is erroneous, it maintains that carrying is susceptible to clear interpretation by the general public and requires no definition. We need not decide these contentions since any claimed error is harmless.
 
 
 31
 Under Lopez, the " 'omission [or misdescription] is harmless only if review of the facts found by the jury establishes that the jury necessarily found the omitted [or misdescribed] element.' " Lopez, 100 F.3d at 103 (emphasis in original) (citation omitted). The only evidence that the jury could have convicted Vargas-Hernandez, Domarco-Sanchez and Fidel-Martinez for use was by facts that the guns were being carried pursuant to United States v. Hernandez, 80 F.3d 1253, 1257-58 (9th Cir.1996) (requiring that the defendant must have "transported the firearm on or about his person," and the gun must be "immediately available to the defendant"). Since the loaded guns were carried by Fidel-Martinez and Vargas-Hernandez in their waistbands, the guns were necessarily transported on their persons in such a way that it was immediately available for use. See Hernandez, 80 F.3d at 1257-58; Lopez, 100 F.3d at 103-04. The omitted or misdescribed element of carrying in the jury instruction was harmless error.
 
 
 32
 Domarco-Sanchez, who was not carrying a gun but was convicted of aiding and abetting the use or carrying of a gun in the commision of a drug offense, joined Vargas-Hernandez's brief on this issue without applying the argument to the specific facts pertaining to his conviction. As a result, Domarco-Sanchez's conviction for count three is affirmed.
 
 
 33
 V. THE DISTRICT COURT DID NOT ERR BY ADMITTING EVIDENCE OF DOMARCO-SANCHEZ'S PRIOR DRUG CONVICTION UNDER FED.R.EVID. 403
 
 
 34
 Where, as here, the defendant did not raise an objection at trial to the admission of the evidence, this court reviews for plain error. United States v. Bracy, 67 F.3d 1421, 1432 (9th Cir.1995). In order for the defendant to prevail, the error must be plain and affect substantial rights. United States v. Karterman, 60 F.3d 576, 579 (9th Cir.1995). In order for the error to affect substantial rights it must be prejudicial; the defendant bears the burden of persuasion to establish the prejudicial effect. Id.
 
 
 35
 While Domarco-Sanchez concedes that the admission of prior drug conviction evidence (possession of five pounds of marijuana for sale) was relevant under Fed.R.Evid. 404(b), he argues that its admission was erroneous because the evidence was unnecessary to establish his knowledge of, and intention to participate in, the conspiracy. The evidence was necessary since Domarco-Sanchez's trial counsel argued that the government's evidence failed to demonstrate Domarco-Sanchez's intention to participate in the transaction, the unsubstantiated testimony of the CI was the only evidence against Domarco-Sanchez and that the government had no evidence linking Domarco-Sanchez to the transaction.
 
 
 36
 Domarco-Sanchez also argues that the admission of the evidence was not clear and convincing. The standard for admission is not clear and convincing, however, but rather asks " 'if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.' " Huddlestone v. United States, 485 U.S. 681, 685 (1987).
 
 
 37
 The evidence was properly admitted. Domarco-Sanchez failed to meet his burden of persuasion in showing that admission of the prior drug conviction was plain error and that it had a prejudicial effect. See Karterman, 60 F.3d at 579.
 
 
 38
 VI. VARGAS-HERNANDEZ'S SENTENCE WAS NOT CRUEL AND UNUSUAL PUNISHMENT
 
 
 39
 "[A] sentence within the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment unless the sentence is so 'grossly out of proportion to the severity of the crime' as to shock our sense of justice.' " United States v. Cupa-Guillen, 34 F.3d 860, 864 (9th Cir.1994).
 
 
 40
 Vargas-Hernandez (a 22 year-old first offender) argues that his 248-month prison term violates the Eighth Amendment's prohibition against cruel and unusual punishment as it is disproportional. Vargas-Hernandez lists and summarizes almost 30 cases in which the sentences imposed were struck down as excessive, disproportional or violative of the Eighth Amendment. However, none of the cases cited by Vargas-Hernandez is persuasive.
 
 
 41
 One of the principal cases relied on by Vargas-Hernandez, Solem v. Helms, 463 U.S. 277 (1983) (reversing a potential life sentence for a seventh felony consisting of a $100 bad check as violative of proportionality), has been called into doubt by Harmelin v. Michigan, 501 U.S. 957, 961, 966 (1991) (plurality opinion) (sentence of life imprisonment without parole for a first offense of possession of 672 grams of cocaine did not violate Eighth Amendment). The Court in Harmelin stated that Solem was "scarcely the expression of clear and well accepted constitutional law" and "was simply wrong." Harmelin, 501 U.S. at 965. United States v. Bland, 961 F.2d 123, 129 (9th Cir.1992) clarified Harmelin and stated that only extreme sentences grossly disproportionate to the offense are forbidden by the Eighth Amendment. Id. Lengthy sentences for drug offenses have repeatedly survived challenge under the Eighth Amendment. See Hutto v. Davis, 454 U.S. 370, 371, 375 (1982) (Eighth Amendment challenge to sentence of 40 years for possession on nine ounces of marijuana rejected); United States v. Martinez, 967 F.2d 1343, 1348 (9th Cir.1992) (40 year sentence for possession of one kilogram of cocaine and firearms upheld); United States v. Van Winrow, 951 F.2d 1069, 1071 (9th Cir.1991) (Eighth Amendment challenge against life sentence without parole for possession with intent to distribute 151.9 grams of cocaine rejected).
 
 
 42
 Vargas-Hernandez fails to demonstrate that his sentence, which is within both statutory and sentencing guideline limits, is so grossly disproportional so as to shock our sense of justice. See Cupa-Guillen, 34 F.3d at 864.
 
 
 43
 VII. THE DISTRICT COURT DID NOT ERR BY UPWARDLY ADJUSTING ROSALES-CEJA'S SENTENCE UNDER U.S.S.G. § 2D1.1(b)(1)
 
 
 44
 The district court's factual findings in the sentencing phase are reviewed for clear error. United States v. Shrestha, 86 F.3d 935, 938 (9th Cir.), cert. denied, 117 S.Ct. 375 (1996).
 
 
 45
 Rosales-Ceja argues that the district court's decision to assign two points to his offense level pursuant to U.S.S.G. § 2D1.1(b)(1) was erroneous because his codefendants' possession of firearms was not reasonably foreseeable to him. When asked at his first trial why he did not run away as soon as he realized that he was involved in a drug deal, Rosales-Ceja answered that he might get shot based on his knowledge of drug deals that he has seen on television. When asked if he meant being shot by the other people in the drug deal, Rosales-Ceja said, "[m]aybe so." At the second trial, he denied fearing that he would be shot by people involved in the drug deal and stated that he feared getting shot by the police. The district court specifically found that Rosales-Ceja's testimony was "laced with mendacity."
 
 
 46
 Rosales-Ceja also argues that Arciniega did not receive a two point offense increase when Arciniega was more culpable than he. To the extent that a disparity exists between Arciniega's and Rosales-Ceja's sentences, which are both 292 months, a disparity is not a sufficient basis for attacking an otherwise valid sentence under the guidelines. See United States v. Valdez-Soto, 31 F.3d 1467, 1476 (9th Cir.1994), cert. denied, 115 S.Ct. 1969 (1995).
 
 
 47
 The district court found that Rosales-Ceja foresaw the presence of the guns to effectuate the drug sale based on his testimony at the first two trials. While it could be argued whether Rosales-Ceja actually foresaw that Fidel-Martinez and Vargas-Hernandez would be carrying firearms, it is not clear error for the district court to have determined that the guns were reasonably foreseeable to Rosales-Ceja. As a result, the district court did not err in imposing a two-level increase in Rosales-Ceja's offense level under § 2D1.1(b)(1).
 
 CONCLUSION
 
 48
 Fidel-Martinez's, Vargas-Hernandez's, Domarco-Sanchez's and Arciniega's convictions are AFFIRMED. Vargas-Hernandez's and Rosales-Ceja's sentences are AFFIRMED.
 
 
 
 *
 The following cases were argued and submitted, USA v. Domarco-Sanchez, No. 95-10467, USA v. Arciniega, No. 95-10536, and USA v. Rosels-Ceja, No. 96-10013
 
 
 **
 USA v. Fidel-Martinez, No. 95-10461 and USA v. Vargas-Hernandez, No. 95-10462 were submitted without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 * This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3