UNITED STATES of America, Plaintiff–Appellee,

v.

Jose Luis CUPA–GUILLEN, Defendant–Appellant.

No. 93–10383.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 1994.

Decided Sept. 6, 1994.

---

Ann Hardgrove Voris, Asst. Federal Public Defender, Fresno, CA, for defendant-appellant.

Karen A. Kalmanir, Asst. U.S. Atty., Fresno, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, CANBY, Circuit Judge, and KELLEHER,* District Judge.

KELLEHER, Senior District Judge:

Jose Luis Cupa–Guillen appeals the district court's 100–month sentence which was imposed after he was found guilty of being a deported alien found in the United States after conviction for an aggravated felony in violation of 8 U.S.C. § 1326(b)(2). Cupa–Guillen contends that § 1326(b)(2) violates the due process clause and that the sentence imposed thereunder constitutes cruel and unusual punishment in violation of the Eighth Amendment. We disagree.

## FACTUAL AND PROCEDURAL BACKGROUND

Jose Luis Cupa–Guillen, a native and citizen of Mexico, entered this country illegally. On September 5, 1985, he was convicted in Fresno County Superior Court for the sale of heroin. The court imposed a three-year pris-

---

* The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation.

on term. On February 20, 1986, Cupa–Guillen was deported from the United States to Mexico.

Cupa–Guillen subsequently re-entered the United States without the permission of the Attorney General. On September 10, 1987, he entered a guilty plea for the sale of cocaine and was released from custody. On September 16, 1987, Cupa–Guillen was deported.

Cupa–Guillen again re-entered the United States without the permission of the Attorney General. On October 8, 1991, he was deported. On June 29, 1992, Cupa–Guillen was found in Fresno County in the course of a drug investigation being conducted by the Fresno Police Department. At the time, Cupa–Guillen was using the name David Renteria, and claimed to be a legal alien with no documentation. Upon questioning, U.S. Border Patrol agents determined his true identity. Thereafter, Cupa–Guillen admitted that he had illegally re-entered the United States without first having obtained the permission of the Attorney General.

On July 16, 1992, Cupa–Guillen was charged by Indictment with being a deported alien found in the United States in violation of 8 U.S.C. § 1326. On November 12, 1992, Cupa–Guillen was charged by Superseding Indictment with being a deported alien found in the United States after conviction for an aggravated felony in violation of 8 U.S.C. § 1326(b)(2). The Superseding Indictment specifically alleged that Cupa–Guillen was deported after convictions for the sale of heroin and cocaine.

Cupa–Guillen filed a pretrial motion to dismiss the Superseding Indictment, claiming, *inter alia,* that § 1326 violates the due process clause because it punishes on the basis of his status as an alien. The district court denied the motion, finding, in part, that "§ 1326 punishes on the basis of illegal re-entry, not status, and is therefore constitu-

tional." A jury found Cupa–Guillen guilty as charged for violating § 1326(b)(2).

At sentencing, Cupa–Guillen reiterated his due process argument. He further claimed that the probation officer's recommended sentence of 112 months constituted cruel and unusual punishment in violation of the Eighth Amendment. The district court rejected these contentions, explaining that Cupa–Guillen was not being punished for merely being in the United States. Instead, he was "being punished because he was deported after committing an aggravated felony." The district court sentenced Cupa–Guillen to a 100–month term of imprisonment.[1]

## DISCUSSION

### I. Due Process Claim

■ A district court's refusal to dismiss an indictment on due process grounds is reviewed *de novo.* See *United States v. Williams,* 791 F.2d 1383, 1386 (9th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986). In addition, because of Congress' plenary power to control immigration, "[t]he scope of judicial inquiry into immigration legislation is exceedingly narrow." *United States v. Barajas–Guillen,* 632 F.2d 749, 752 (9th Cir.1980).

Under 8 U.S.C. § 1326(b)(2), "any alien who has been arrested and deported" and who thereafter "enters . . . or is at any time found in, the United States . . . whose deportation was subsequent to a conviction for commission of an aggravated felony"[2] is guilty of a felony and "shall be . . . imprisoned not more than 15 years."

Cupa–Guillen argues that § 1326 violates due process because it punishes solely on the basis of his status as an alien. More specifically, he claims that § 1326 sets forth a strict liability offense which punishes "wholly passive conduct." According to Cupa–Guillen, being subjected to criminal liability for violat-

---

1. The sentence was based on the low end of the guideline range of 100 to 125 months. This range resulted from a total offense level of 24 and a criminal history category of VI.

2. Application Note 7 to U.S.S.G. § 2L1.2 defines an "aggravated felony," among other things, as "any illicit trafficking in any controlled substance (as defined in 21 U.S.C. § 802), including any drug trafficking crime as defined in 18 U.S.C. § 924(c)(2)."

ing a statute unaccompanied by any activity whatever, other than merely being present in the United States, is unconstitutional. He analogizes to *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), where the Supreme Court held that a person cannot be convicted of a crime simply because he has the forbidden status of being a drug addict.

▆▆▆▆] Cupa–Guillen misinterprets § 1326 because the statute does not set forth a status crime. Where an offense is based on an underlying act which society has an interest in preventing, the offense is not a status crime. *See United States v. Kidder*, 869 F.2d 1328, 1332 (9th Cir.1989). Cupa–Guillen is not being punished simply because he has the status of an alien. Instead, the statute specifically punishes the *act* of illegally re-entering the United States without permission after having been previously deported and convicted of an aggravated felony. *See* 8 U.S.C. § 1326(b)(2).[3] Cupa–Guillen was convicted and sentenced for his *actions* in committing two prior aggravated felonies, being deported, then illegally returning to the United States without the permission of the Attorney General. Therefore, because § 1326 requires an affirmative act of re-entry, Cupa–Guillen's mere presence argument fails.

Further, there is a strong societal interest in controlling immigration and in effectively policing our borders. *See Kidder*, 869 F.2d at 1332. This interest is furthered by enhancing punishment against persons who illegally enter the country after having previously committed aggravated felonies. Therefore, the offense enumerated in § 1326(b)(2) cannot be characterized as a status crime.

▆▆▆ Cupa–Guillen's strict liability argument is also without merit. Although § 1326(b)(2) does not contain language on intent, the mere "fact that a criminal statute omits any mention of intent does not mean

that it will necessarily be construed as eliminating that element from the crime denounced." *Pena–Cabanillas v. United States*, 394 F.2d 785, 788 (9th Cir.1968) (citing *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)). Indeed, we have held that the crime of being a deported alien found in the United States is a general intent crime. *Id.* at 790. We explained that although § 1326 does not include language bearing on specific intent, "[t]here still must be the general intent to do the prohibited act, to-wit enter." *Id. See also United States v. Espinoza–Leon*, 873 F.2d 743, 746 (4th Cir.), *cert. denied*, 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989) (general intent need only be proven to secure a conviction under § 1326). Therefore, the offense of being a deported alien found in the United States after the commission of an aggravated felony is not, as Cupa–Guillen argues, a strict liability offense.[4] Rather, the government must show that the conduct was accompanied by the general intent to re-enter. *Pena–Cabanillas*, 394 F.2d at 790.

Accordingly, Cupa–Guillen's due process argument fails because the statute challenged defines a general intent crime which punishes an individual's conduct, not his status.

## II. Equal Protection Claim

▆▆▆ It is well established that issues not presented to the trial court cannot be raised for the first time on appeal. *United States v. Whitten*, 706 F.2d 1000, 1012 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). Indeed, we have refused to consider expanded constitutional challenges on appeal. *See e.g., United States v. Hutson*, 843 F.2d 1232, 1238 (9th Cir.1988). Cupa–Guillen broadens his constitutional attack by arguing that § 1326 violates the equal protection clause because it punishes on the basis of his status as an alien, which is a suspect classification. The crux of his ar-

---

**3.** To obtain a conviction under § 1326(b)(2), the government must prove that: (1) the accused is an alien; and (2) the accused unlawfully re-entered the United States after being deported and convicted of an aggravated felony. *See United States v. Gonzalez–Medina*, 976 F.2d 570 (9th Cir.1992).

**4.** We do not reach the issue of whether § 1326 would be unconstitutional if it were a strict liability offense.

gument hinges on the contention that § 1326 is a strict liability offense that punishes "mere presence" in the United States. However, because Cupa–Guillen failed to raise this equal protection argument below, the claim is waived and will not be considered by this Court.

### III. Cruel and Unusual Punishment Claim

■ The Eighth Amendment to the Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. In order to pass muster under the Eighth Amendment, "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009–10, 77 L.Ed.2d 637 (1983). However, "a sentence within the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment unless the sentence is so 'grossly out of proportion to the severity of the crime' as to shock our sense of justice." *United States v. Vega–Mejia,* 611 F.2d 751, 753 (9th Cir.1979) (citing *United States v. Washington,* 578 F.2d 256, 258–59 (9th Cir.1978)).

Cupa–Guillen argues that the punishment he received is not proportional to the crime committed because an American citizen cannot be prosecuted for the crime of "being here" and because the guidelines provide lesser sentences for other crimes such as possession of a machine gun, bank robbery, and aggravated assault with a firearm.[5]

Cupa–Guillen's proportionality argument is not persuasive. While he reiterates his claim that he was punished for merely "being here," as discussed above, this is simply not true. Cupa–Guillen is being punished for his conduct: illegally re-entering the United States after previously being convicted of two aggravated felonies. Obviously, an American citizen could not be convicted of illegally re-entering this country. This fact, however, does not in any way establish that punishing an alien for such conduct constitutes cruel and unusual punishment. As the Supreme

Court has acknowledged in discussing the broad power of Congress over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (quoting *Mathews v. Diaz,* 426 U.S. 67, 80, 96 S.Ct. 1883, 1891, 48 L.Ed.2d 478 (1976)). *See also Harisiades v. Shaugnessy,* 342 U.S. 580, 586, 72 S.Ct. 512, 517, 96 L.Ed. 586 (1952) ("Under our law, the alien in several respects stands on equal footing with citizens, but in others has never been conceded legal parity with the citizen.").

■ Further, the proportionality inquiry does not compare the sentence under attack against sentences for other offenses. Instead, the threshold determination in the analysis is whether a "comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin v. Michigan,* 501 U.S. 957, 1005, 111 S.Ct. 2680, 2707, 115 L.Ed.2d 836 (1991). As such, Cupa–Guillen's comparison of the 100–month sentence he received against sentences received for other crimes is not at all relevant to the inquiry at hand.

In *Vega–Mejia,* we rejected a similar contention that a sentence pursuant to § 1326(a) constituted cruel and unusual punishment. 611 F.2d at 753. We held that a two-year sentence imposed on a deported alien who had not been previously convicted of aggravated offenses did not "shock our sense of justice." *Id.* Moreover, we noted that a sentence within the statutory limits would rarely be overturned. *Id.*

Cupa–Guillen's 100–month sentence is well within the statutory limit of 15 years. The sentence was based upon an ordinary application of the Sentencing Guidelines, Section 2L1.2, which applies to all aliens who have unlawfully entered the United States. Indeed, the sentence was at the low end of the guideline range of 100 to 125 months.

Further, the district court took into consideration Cupa–Guillen's offense level and

---

5. Cupa–Guillen also argues that he believed, based on the warnings given to him and signed by him, that if he returned to this country within five years, he would only be subjected to a two-
year penalty. In light of our decision in *United States v. Ullyses–Salazar,* 28 F.3d 932 (9th Cir. 1994), this argument is without merit.

criminal history category when it determined his sentence. The presentence report, upon which the district court relied, accounted for Cupa–Guillen's deportation on three prior occasions following two convictions for aggravated felonies. The report also considered that Cupa–Guillen is a recidivist who has been convicted for possession of a dangerous weapon, receiving stolen property, and false identification to a Peace Officer. In addition, at the time of this offense, Cupa–Guillen was on parole supervision to the California Department of Corrections and a probation violation warrant was outstanding from the Fresno County Superior Court.

Thus, Cupa–Guillen's 100–month sentence is not so grossly disproportionate to the crime as to "shock our sense of justice." Accordingly, Cupa–Guillen's sentence does not violate the Eighth Amendment's prohibition against cruel and unusual punishment.

**AFFIRMED.**