72 F.3d 136
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
James A. TELLEZ, Defendant-Appellant.
 No. 94-10573.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 16, 1995.
Decided Dec. 14, 1995.
 
 1
 Before: SCHROEDER and ALARCON, Circuit Judges, and WHALEY,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 James A. Tellez was found guilty by jury of robbery committed at the Arizona Central Credit Union on January 11, 1994. The Government relied on eye witness testimony to connect him to the crime. Evidence seized before and after his warrantless arrest on May 7, 1994 was introduced at his trial, over his objection.
 
 
 4
 He seeks reversal of the judgment of conviction on the following grounds:
 
 
 5
 One. The district court erred in denying his motion to suppress the evidence seized by the arresting officers.
 
 
 6
 Two. The district court erred in finding that the pretrial identification procedure did not render the in-court identification unreliable.
 
 
 7
 Three. The district court abused its discretion in excluding the testimony of a witness called as an expert on eye witness identification.
 
 
 8
 Four. The district court abused its discretion by admitting evidence that was not relevant to a determination of his guilt of bank robbery.
 
 
 9
 We discuss each of these issues and the facts pertinent thereto under separate headings.
 
 
 10
 * ADMISSION OF PHYSICAL EVIDENCE SEIZED WITHOUT A SEARCH WARRANT
 
 A. Stop and Detention
 
 11
 Tellez contends that Phoenix Police Officer Thomas H. Parker did not have a reasonable suspicion to justify stopping and detaining him. Because Tellez did not raise this objection in the district court, we will not consider it in this appeal. See United States v. Cupa-Guillen, 34 F.3d 860, 863-64 (9th Cir.1994), (issues not presented to the district court cannot be raised for the first time on appeal), cert. denied, 115 S.Ct. 921 (1995).
 
 B. Seizure of the Shotgun
 
 12
 Tellez asserts that the seizure of the shotgun was unreasonable because it is legal to carry an unconcealed shotgun in Arizona. This argument is devoid of any merit. Law enforcement officers may seize any weapon that is in plain view to protect themselves from injury. When Officer Parker saw the shotgun in the Lincoln Continental, Tellez and 10 to 12 other persons were milling around in the vicinity of the vehicle. The shotgun presented a threat to Officer Parker's safety because one of those individuals could have entered the vehicle and seized the shotgun. See United States v. Good, 780 F.2d 733, 775 (9th Cir.) (it was reasonable for officers to seize a weapon in plain view that presents a danger to their safety), cert. denied, 475 U.S. 1111 (1986). Accordingly, seizure of the shotgun did not violate the Fourth Amendment.
 
 
 13
 C. Search of the Trunk and the Duffle Bag.
 
 
 14
 Tellez maintains that the officers did not have probable cause to search the trunk of the Lincoln Continental and the closed duffle bag contained therein. We disagree.
 
 
 15
 We review de novo a district court's determination that probable cause existed for the search of a vehicle and its locked trunk. United States v. Alvarez, 899 F.2d 833, 839 (9th Cir.1990), cert. denied, 498 U.S. 1024 (1991). "Probable cause exists if, under the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " Id. at 839; see also United States v. Ross, 456 U.S. 798, 825 (1982) ("[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search"). In determining whether the officers had probable causes, we must examine the evidence in the record in a "common sense realistic manner." United States v. Crozier, 777 F.2d 1376, 1380 (9th Cir.1985).
 
 
 16
 The totality of the circumstances demonstrates that the officers had probable cause to search the trunk and the duffel bag for evidence related to the firing of the shotgun and suspicious conduct connected with possible satanic rituals that endangered nearby church property. Accordingly, we need not consider whether the district court erred in concluding that Tellez consented to the search of the trunk.
 
 II
 RELIABILITY OF THE EYE WITNESS TESTIMONY
 
 17
 Tellez contends that because the photo array displayed to the witnesses of the crime was impermissibly suggestive, the district court erred in denying his motion to exclude their identification testimony. The constitutionality of pretrial identification procedures is reviewed de novo. United States v. Simoy, 998 F.2d 751, 752 (9th Cir.1993). We must examine the totality of the circumstances of the pretrial identification procedures to determine whether they were impermissibly suggestive and if the witnesses' identification of the accused was reliable.
 
 
 18
 On May 10, 1994, Detective Joe Contreras assembled a five person photo array including a photograph of Tellez. The photo array was presented to four witnesses of a bank robbery that had taken place at the Arizona Central Credit Union on January 11, 1994.
 
 
 19
 Tellez asserts that the lineup procedure was suggestive because his photograph stood out from the other photographs in the photo array. Contrary to Tellez's assertion, however, the photographs used for the photo array were not suggestive. The men depicted in the photographs have similar features and complexion. They each have a goatee and, at least four of the men, have hair long enough to be put into a ponytail. Although the photograph of Tellez was the only one with vertical and horizontal lines in the background, these fairly innocuous markings would be unlikely to focus undue attention on Tellez. See United States v. Perry, 991 F.2d 304, 311 (6th Cir.1993) (photo lineup not impermissibly suggestive where defendant's photo was only one without mug shot height lines in background); see also Cikora v. Dugger, 840 F.2d 893, 896 (11th Cir.1988) (photo lineup not overly suggestive where defendant's photo was only one with height markings in background).
 
 
 20
 Tellez argues that Detective Contreras tainted the lineup by suggesting to the bank's manager, John Purvis, that a person's weight may change. We disagree. Detective Contreras' comment was made after Purvis had focused on Tellez's picture. Furthermore, the record shows that the comment did not reinforce Mr. Purvis' selection. He remained unsure whether Tellez was the robber even after the statement was made.
 
 
 21
 Tellez contends that Detective Contreras' conduct in showing Carolyn Davison a color photograph of Tellez after she had tentatively selected his photograph from those in the photo array was suggestive because it tended to reinforce her choice. Davison did not testify. Therefore, Tellez was not harmed because she saw the color photograph. Tellez makes the same argument regarding Detective Contreras' direction to Carolyn Davison, Ruth Betnar, and Katy Vanderham to place their signatures on the back of Tellez's photograph after they made a tentative identification. We agree that this procedure may have tended to persuade Betnar and Vanderham that their selection of Tellez's photograph as depicting the bank robber was accurate.
 
 
 22
 Our conclusion that some of the procedures followed by Detective Contreras were suggestive does not end our task. A demonstration of suggestiveness does not compel automatic reversal, if the totality of the circumstances demonstrate that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 106-07 (1977).
 
 
 23
 Where the witness was subjected to a suggestive procedure, the Supreme Court has instructed that we must consider the following factors in assessing the reliability of the witness' identification:
 
 
 24
 The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the time of the confrontation, and the length of time between the crime and the confrontation.
 
 
 25
 Neil v. Biggers, 409 U.S. 188, 199 (1972).
 
 
 26
 We have examined the record in this matter and weighed the factors to be considered in evaluating the likelihood of misidentification against the suggestive impact of Contreras' actions. We conclude that the in-court identification of the eye witnesses were reliable. Vanderham testified that she was able to view the robber's face for approximately 20 minutes during the robbery. At one point his face was only four feet away from her. She gave a detailed description of the clothes the perpetrator was wearing. Her initial description of the robber was fairly accurate: she described him as a light skinned Hispanic, with a goatee and black hair tied in a ponytail, 5'7"' to 5'9"' tall, and weighing approximately 160 to 175 lbs. The record shows that Tellez is Hispanic, light complected, 5'10"' tall, weighs 160 lbs, and has black hair and a goatee. Vanderham did not hesitate in identifying Tellez at trial and stated that she was basing her identification on her memory of the event, not the photo array. Finally, only four months had passed between the robbery and her identification of Tellez's photograph. See Biggers, 409 U.S. at 201 (an identification that took place seven months after a crime was held to be reliable).
 
 
 27
 The record also demonstrates that Betnar's identification was sufficiently reliable to be admitted at trial. Betnar's initial description of the robber was highly accurate: she described him as 5'10"' tall, weighing 160 lbs, with a goatee and black hair pulled back in a ponytail. She also did not hesitate in identifying Tellez at trial, four months after the robbery.
 
 
 28
 We are persuaded from our review of the record that the in-court identification of these witnesses was sufficiently reliable to permit the trier of fact to hear their testimony. Simmons v. United States, 390 U.S. 377, 384 (1968).
 
 III
 EXCLUSION OF DR. LANYON'S TESTIMONY
 
 29
 Tellez asserts that the district court erred by precluding Dr. Lanyon's testimony about the reliability of eyewitnesses. The district court precluded Dr. Lanyon's testimony after concluding that he did not demonstrate the requisite expertise to testify, his testimony would be confusing, and the subject could be handled properly by a jury instruction.
 
 
 30
 A district court's admission of expert testimony regarding eyewitness identification is reviewed for abuse of discretion. United States v. Rincon, 28 F.3d 921, 923 (9th Cir.), cert. denied, 115 S.Ct. 605 (1994). Rule 702 of the Federal Rules of Evidence provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Thus, the district court could admit Dr. Lanyon's testimony only if he was "proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S.Ct. 2786, 2796 (1993).
 
 
 31
 Dr. Lanyon's testimony was properly excluded. He did not identify any specific scientific study or theory he relied upon to formulate his opinion. Because Dr. Lanyon did not demonstrate that he was relying on scientific knowledge, his testimony did not meet the first requirement set forth in Daubert. Further, the district court informed the jury about the reliability of eyewitness testimony when it gave the jury extensive instructions on the subject. Therefore, the district court did not abuse its discretion by excluding Dr. Lanyon's testimony. See Rincon, 28 F.3d at 924-26 (district court properly excluded expert's testimony regarding eyewitnesses where expert did not specifically cite scientific studies upon which she was going to base her testimony, and a jury instruction adequately informed the jury about the reliability of eyewitness testimony).
 
 IV
 
 32
 EVIDENTIARY RELEVANCE OF THE ITEMS FOUND IN THE TRUNK
 
 
 33
 Tellez asserts that the district court erred by denying his motion in limine to preclude the admission of the weapons and related items found in his trunk. He argues that the evidence was not relevant to the bank robbery charges, and that any probative value of the evidence was outweighed by the danger of unfair prejudice. See Fed.R.Evid. 403 ("although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice"). A district court's decision regarding the relevance of evidence is reviewed for abuse of discretion. United States v. Vaandering, 50 F.3d 696, 704 (9th Cir.1995). We also review a district court's decision to admit or exclude evidence under Rule 403 for abuse of discretion. United States v. Crespo de Llano, 838 F.2d 1006, 1018 (9th Cir.1987).
 
 
 34
 The Government contends that the weapons and related items were relevant as evidence of unexplained wealth. See Lyda v. United States, 321 F.2d 788, 790 (9th Cir.1963) (evidence of sudden affluence is relevant to prove a crime for which pecuniary gain was the motive); see also Sidders v. United States, 381 F.2d 513, 515 (9th Cir.1967) (evidence that shows the defendant was impecunious before the crime, but has a substantial amount of money after the crime, is admissible as circumstantial evidence that the crime was the source of the money).
 
 
 35
 The evidence presented at the trial supports the Government's theory that Tellez had a sudden increase in wealth. Prior to the bank robbery, Tellez lived with his girlfriend for several months. He occasionally gave her $20 or $30 for groceries. He worked at a McDonald's restaurant for a period of time, and then at a factory outlet. After the date of the robbery, however, he began spending substantial amounts of cash. He flew to visit his girlfriend four times, he gave his girlfriend $100 in cash, and he bought a car for $3,690 in cash. In light of this evidence, the district court did not abuse its discretion by admitting the weapons and related items as further evidence of unexplained wealth, even though the government had not established when the items were purchased. Any prejudicial impact of this evidence was outweighed by its probative value as circumstantial evidence that Tellez committed the crime of bank robbery.
 
 
 36
 Tellez also contends that the district court erred by admitting testimony describing his T-shirt as "satanic-like," referring to automatic weapons, and describing the money found in the duffel bag as "banking institution money" because the evidence lacked foundation and was highly prejudicial. The Government contends that Tellez waived this objection by not raising it at trial. See Cupa-Guillen, 34 F.3d at 863-64 (issues not presented to the district court cannot be raised for the first time on appeal). However, despite Tellez's failure to object, we may correct an error "if it is 'plain' and 'affect[s] substantial rights.' " United States v. Olano, 113 S.Ct. 1770, 1777 (1993) (citing Fed.R.Crim.P. 52(b)). " 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' " Id.
 
 
 37
 Tellez first contends that the district court erred by admitting the statements because they lack foundation. Tellez is apparently referring to Fed.R.Evid. 602, which requires that witnesses testify only on matters of which they have personal knowledge, and Fed.R.Evid. 704, which allows lay witnesses to state opinions or inferences only if they are rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony. The witness' testimony did not violate these rules. First, Sergeant Wamsley's opinion that Tellez was wearing a "satanic like T-shirt" was based on his personal observations. Likewise, Sergeant Wamsley's statement that when he opened the duffel bag he found a "large amount of cash bundled individually with wrapping paper, which my immediate impression was from some type of a banking institution because of the way it was packaged" was also a lay opinion, based on Wamsley's personal observations. Sergeant Wamsley's reference to the cost of automatic weapons was based on his personal observations and past experience as a law enforcement officer. Tellez has failed to demonstrate that the admission of the challenged statements was plain error.
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not 9th Cir.R. 36-3