**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Walter J. HOYT, III, Defendant—
Appellant.**

No. 01–30257.
D.C. No. CR–98–00529–JO–04.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2002.

Decided Sept. 19, 2002.

Before FERGUSON, W. FLETCHER, Circuit Judges, and KING,* District Judge.

MEMORANDUM**

Defendant/Appellant Walter Jason Hoyt, III appeals his jury conviction and sentence for 1 count of conspiracy to commit fraud (18 U.S.C. § 371); 31 counts of mail fraud (18 U.S.C. §§ 2, 1341); 3 counts of bankruptcy fraud (18 U.S.C. §§ 2, 152(1), (2), (3)); and 17 counts of money laundering (18 U.S.C. §§ 2, 1957). Because the parties are familiar with the facts and the procedural history, they are not recited here.

On appeal, Hoyt argues that the District Court erred by: (1) imposing a disparate sentence as compared to his co-defendant, (2) failing to depart downward because of his age and physical condition, (3) denying his motion to suppress, and (4) denying his motion to dismiss the bankruptcy fraud and money laundering charges. This Court has jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm.

---

\* The Honorable George H. King, United States District Judge for the Central District of California, sitting by designation.

\*\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. In his brief, Hoyt also discusses the fact that his brother, Ric Hoyt, was never prosecuted or sentenced for his role in the scheme. Ric

## A. Disparate Sentences

Hoyt argues that the District Court abused its discretion by denying his request for a downward departure based on a disparity in sentencing between him and his co-defendant, David Barnes. Hoyt contends that the only difference between them was that he asserted his constitutional right to stand trial, whereas Barnes pleaded guilty prior to trial (and testified for the Government at trial).[1]

A claim of disparate sentencing is reviewed for an abuse of discretion. *See United States v. Meyers,* 847 F.2d 1408, 1416 (9th Cir.1988); *see also United States v. Bischel,* 61 F.3d 1429, 1437 (9th Cir. 1995). In *Bischel,* we affirmed the defendant's sentence of twenty years despite the fact that one of his co-defendants was sentenced to two-years imprisonment and the other was placed on probation. *Id.* We reasoned that, "[g]enerally, the imposition of disparate sentences alone is not an abuse of discretion, and a judge isn't required to give reasons for a disparate sentence in the absence of any evidence that a defendant is being punished for exercising his right to stand trial." *Id.* We rejected the defendant's contention that his sentence was more severe because he had exercised his trial rights. *Id.* We emphasized that the district court considered various factors other than the fact that the defendant did not plead guilty. *Id.* (noting that the defendant was more culpable than his co-defendants because he "could be

Hoyt was given complete immunity by the prosecution for his cooperation in the investigation and at trial. The decision to prosecute typically falls within the discretion of the Government. *Cf. United States v. Banuelos–Rodriguez,* 215 F.3d 969, 977–78 (9th Cir.2000) (en banc). Moreover, during the sentencing hearing, Hoyt's attorney waived this argument, explicitly stating that he agreed with the District Court's reasoning as to Ric Hoyt.

characterized as the organizer of the fraud").

This case is controlled by our holding in *Bischel.* Nothing in the record indicates an impermissible motive by the District Court, i.e., that it was punishing Hoyt for exercising his right to stand trial. The District Court sentenced Hoyt within the guideline range of 188–235 months. It explained that it had "selected the top of the guideline range because this [was] the most egregious white collar crime committed in the history of the State of Oregon that [had] not only involved vast amounts of damages, but [had] effected the lives of thousands of innocent victims." In addition, the District Court emphasized Hoyt's role as the organizer of the fraud, stating that he was "in utter control of [the organization] and what happened." Because there is no evidence that Hoyt was being punished for exercising his right to stand trial, the District Court did not abuse its discretion by disparately sentencing Hoyt and his co-defendant.

## B. Departures for Physical Condition and Age

Hoyt contends that the District Court erred by denying his requests for downward departures based on his physical condition and age. His arguments are twofold.

■ First, Hoyt argues that the District Court abused its discretion in denying downward departures based on physical condition and age. This Court lacks jurisdiction to review a district court's discretionary denial of a request for downward departure from the sentencing guidelines. *United States v. Romero,* 293 F.3d 1120, 1121 (9th Cir.2002); *see also Williams v. United States,* 503 U.S. 193, 198–99, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992) (holding that, under 18 U.S.C. § 3742, a defendant may file an appeal if the district court

departed upward from the guideline range, whereas the Government may appeal if the district court departed downward); *see United States v. Ruiz,* 241 F.3d 1157, 1161–62 (9th Cir.2001), *rev'd on other grounds,* —— U.S. ——, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). Thus, we lack jurisdiction to review the District Court's refusal to depart based on Hoyt's physical condition and age.

■ Second, Hoyt argues that, because of his physical condition and age, his sentence amounts to a presumptive life sentence and, thus, is violative of the Eighth Amendment prohibition of cruel and unusual punishment. *See* U.S. Const. amend. VIII. "However, a sentence within the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment unless the sentence is so grossly out of proportion to the severity of the crime as to shock our sense of justice." *United States v. Cupa–Guillen,* 34 F.3d 860, 864 (9th Cir.1994) (internal quotation marks and citations omitted). In determining whether a defendant's Eighth Amendment right has been violated, the threshold inquiry is whether a defendant's sentence gives rise to an "inference of gross disproportionality" in light of the gravity of the crimes committed. *Andrade v. Attorney Gen.,* 270 F.3d 743, 757 (9th Cir.2001) (citing *Harmelin v. Mich.,* 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring)), *cert. granted,* —— U.S. ——, 122 S.Ct. 1434, 152 L.Ed.2d 379, 70 U.S.L.W. 3497, 70 U.S.L.W. 3609, 70 U.S.L.W. 3613 (2002).

A comparison of Hoyt's punishment with his crimes does not give rise to an inference of gross disproportionality. Hoyt was sentenced to 235–months of incarceration. He was also ordered to pay restitution in the amount of $102,154,302. The District Court described Hoyt's crime as "the most egregious white collar crime

committed in the history of the State of Oregon." Hoyt's fraud impacted over 4,000 people and had actual and intended losses exceeding $200 million. Although the sentence is lengthy, it is within the guideline range and commensurate with the gravity of the offense. *See Cupa–Guillen*, 34 F.3d at 864. Thus, the District Court's imposition of a 235–month sentence did not violate Hoyt's Eighth Amendment rights.

## C. Motion to Suppress

■ Hoyt argues that the District Court erred by denying his motion to suppress. In particular, he challenges the validity of the warrant, asserting that the affiant deliberately and recklessly omitted material facts from his affidavit.[2] Hoyt argues that these omissions precluded the Magistrate Judge from rendering an informed decision in finding probable cause.

"The denial of a motion to suppress evidence is reviewed de novo ...." *United States v. Murillo*, 255 F.3d 1169, 1174 (9th Cir.2001) (citation omitted). A false statement or misleading omission by the affiant negates a facial showing of probable cause only if it is material and made "knowingly and intentionally, or with reckless disregard for the truth." *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.1985). "Where, as here, a warrant's validity is challenged for deliberate or reckless omissions of facts that tend to mislead, the affidavit must be considered with the omitted information included" to determine if probable cause existed. *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir.1992) (citation omitted).

Even if we were to assume that the omissions were deliberate or reckless, the District Court did not err. Hoyt argues that the following facts should have been included: (1) two prior IRS Criminal Investigation Division investigations of Hoyt were conducted, but neither was found worthy of prosecution; (2) the SEC failed to prosecute following its investigation; and (3) the Tax Court had previously issued a favorable ruling in a then ongoing proceeding. In viewing the affidavit with the omitted information, the proffer of evidence was still more than sufficient to establish probable cause. In other words, even with the inclusion of the alleged omissions, the "circumstances set forth" in the affidavit demonstrated a fair probability that evidence of the crimes would be found in the specified locations. *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir.1992). Thus, the omissions were immaterial, and the District Court did not err in denying Hoyt's motion to suppress. *See United States v. McQuisten*, 795 F.2d 858, 862–63 (9th Cir.1986).

## D. Ex Post Facto Clause

■ Hoyt argues that the District Court erred by denying his motion to dismiss the bankruptcy fraud and money laundering charges.[3] Hoyt contends that the Bank-

---

**2.** Hoyt also asserts that the affidavit failed to establish the reliability of the confidential informant and identify the motivations of the defrauded investors who were interviewed. These arguments are without merit. The information from the confidential informant was appropriately used to support probable cause because it had been corroborated by the affiant and a government agency. In addition, the affidavit clearly set forth the cir-

cumstances of the interview, and Hoyt failed to present any evidence that would call into question the veracity of the individual investors.

**3.** Hoyt asserts two additional arguments related to the bankruptcy fraud charges. First, he contends that he was never required to identify two trucks transferred to sham entities because they were leased, not owned by

ruptcy Court's substantive consolidation order retroactively imposed criminal liability on him by requiring disclosure of assets and liabilities as of the filing date of the involuntary bankruptcy petitions. He asserts that the *nunc pro tunc* order was unconstitutional under the Ex Post Facto Clause of the U.S. Constitution. *See* U.S. Const. art. I, § 9, cl. 3; *id.* § 10, cl. 1. This Court reviews a denial of a motion to dismiss based on a violation of a constitutional right de novo. *See United States v. Lam*, 251 F.3d 852, 855 (9th Cir.), *amended by* 262 F.3d 1033, 1034 (9th Cir.2001).

Substantive consolidation allows a bankruptcy court to combine the assets of separate and distinct legal entities based on their close relationship. *In re Bonham*, 229 F.3d 750, 763–64 (9th Cir.2000) (noting that this power originally arose from the bankruptcy court's "general equitable powers"). It "enabl[es] a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation." *Id.* at 764 (alterations in original) (internal quotation marks and citation omitted). "[B]ankruptcy courts have sanctioned the substantive consolidation of two or more entities *nunc pro tunc* in order to allow a trustee or creditors to attack fraudulent transfers or avoidable preferences made by the debtor or consolidated entities as of the date of filing of the initial bankruptcy petition." *Id.* at 765.

Here, the *nunc pro tunc* order did not create retroactive criminal liability for Hoyt. Rather, it consolidated the various Hoyt entities as of the petition filing date in order to allow the trustee to attack the

fraudulent transfers occurring between the debtors and the other Hoyt entities. Hoyt was found guilty of bankruptcy fraud because he transferred assets and funds between the debtors and his sham entities and concealed these transfers, assets, and funds from creditors, investors, and the trustee. *See* 18 U.S.C. § 152. The transfers to sham entities and his attempt to hide his assets were the basis of his criminal liability. The consolidation order was merely a tool used to uncover and prevent the fraud. Thus, the District Court did not err by denying Hoyt's motion to dismiss.

**AFFIRMED.**

---

the debtor entity. Under the bankruptcy provisions, disclosure of lease interests by the debtor entity was required. 11 U.S.C. § 541. Second, Hoyt contends that the amended schedules provided adequate notice of the promissory notes that were allegedly con-

cealed from the trustee. This argument is disingenuous. Hoyt relies on the fact that he included one (two-page) promissory note in hundreds of pages of disclosures as proof that the trustee had adequate notice of the numerous outstanding promissory notes.