T.C. Memo. 2005-163

UNITED STATES TAX COURT

EUGENE A. SANDERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25134-96.          Filed July 5, 2005.

<u>Douglas Alan Azar</u>, for petitioner.

<u>Nhi T. Luu-Sanders</u>, for respondent.

MEMORANDUM OPINION

CARLUZZO, <u>Special Trial Judge</u>:  In what is commonly referred
to as an affected item notice of deficiency, respondent
determined a section 6662(a)[1] accuracy-related penalty of $8,411
(amounts are rounded) with respect to petitioner's 1991 Federal

_____

[1] Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for 1991, and Rule references are
to the Tax Court Rules of Practice and Procedure.

income tax.  The issue for decision is whether the underpayment of tax required to be shown on petitioner's 1991 Federal income tax return is due to negligence or intentional disregard of rules or regulations.

## Background

Some of the facts have been stipulated and are so found.  At the time the petition was filed, petitioner resided in Athens, Alabama.

## A. Hoyt Partnerships

Walter J. Hoyt III (Mr. Hoyt) and some members of the Hoyt family (hereinafter collectively referred to as Hoyt) were in the business of organizing and promoting cattle-breeding partnerships.  From 1971 through 1992, Mr. Hoyt organized and operated as a general partner nearly 100 partnerships.[2]

On February 12, 2001, Mr. Hoyt was convicted in the U.S. District Court for the District of Oregon of 1 count of conspiracy to commit fraud, 31 counts of mail fraud, 3 counts of bankruptcy fraud, and 17 counts of money laundering.  See United

---

[2] For a general description of the Hoyt organization and its operation, see Bales v. Commissioner, T.C. Memo. 1989-568; see also River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150, affd. in part, revd. in part and remanded 401 F.3d 1136 (9th Cir. 2005); Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004); Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); and River City Ranches #4, J.V. v. Commissioner, T.C. Memo. 1999-209, affd. 23 Fed. Appx. 744 (9th Cir. 2001).

States v. Barnes, No. CR 98-529-JO-04 (D. Or. Feb. 12, 2001), affd. sub nom. United States v. Hoyt, 47 Fed. Appx. 834 (9th Cir. 2002).

B.  Petitioner's Backgound and Hoyt Investment

Petitioner holds a bachelor's degree in nuclear engineering and a master's degree in business administration (MBA).  As part of his MBA curriculum, petitioner took accounting and law-related classes.  He has been employed as a mechanical design engineer for over 25 years and was so employed during 1991.

Before 1989, petitioner invested exclusively in stocks and mutual funds.  He had no experience in cattle, ranching, or farming, and he had never been a partner in a partnership.

In or around October 1989, petitioner was "making a lot of money" and "looking for a way to defer taxes", so he discussed investing in a Hoyt partnership with a coworker, Gary Parker (Mr. Parker).  In November 1989, petitioner contacted a Hoyt partner representative for additional information about various Hoyt partnership investment opportunities.  The Hoyt partner representative provided petitioner with promotional materials assembled by Hoyt that included pamphlets,[3] newspaper articles, trade articles, and the Court's opinion in Bales v. Commissioner,

---

[3]  For example, the promotional materials stated, in part, that investors could "earn 11.3% tax free annually paid quarterly in cash and 12.93% in tax savings" and that "income from operations is projected to be sheltered from income tax."

T.C. Memo. 1989-568.[4]  Petitioner also recalled seeing the articles "The 1,000 lbs. Tax Shelter" and "Harvesting the Tax Code" among the Hoyt promotional materials.  Petitioner did not consult an attorney or a tax professional with respect to the information provided in the Hoyt promotional materials.

In November 1989, petitioner invested in the Hoyt partnerships.  Petitioner did not consult an attorney or a tax professional at any time before making his Hoyt investment.

Petitioner originally invested in Hoyt's Timeshares Breeding Services (Timeshares) partnership.[5]  Petitioner signed and executed a Joint Venture Partnership Agreement for five units at a total price of $17,500.  Petitioner also executed, among other documents, a Power of Attorney and a Certificate Of Assumption Of Primary Liability.  Petitioner did not have an attorney review these documents.  Petitioner believed that his Hoyt investment was an "undivided share of a herd."  At the time of his investment, petitioner provided a check in the amount of $17,500 to Mr. Parker for "5 bull units".  Mr. Parker retained a portion

---

[4]  At that time, petitioner was aware that the Bales opinion applied only to the 1977 through 1979 taxable years.

[5]  Timeshares was started by the Hoyt organization in the mid-1980s.  In general, Timeshares arranged leases of bulls ostensibly owned by the Timeshares cattle-breeding partnerships the Hoyt family had organized and promoted to numerous investors.

of petitioner's investment contribution, and the remainder was remitted to Hoyt.

A year after petitioner's initial investment in Timeshares, petitioner's investment was transferred by Hoyt to Durham Shorthorn Breed Syndicate 1987-C (Durham).[6] Petitioner did not sign or receive any partnership documents from Hoyt, such as a subscription agreement, power of attorney, or joint venture partnership agreement, with respect to Durham. Petitioner was not concerned that his investment was transferred by Hoyt to a different partnership.[7]

At no time during his investment was petitioner aware of the number of cattle owned by Durham. At no time did petitioner request or review Durham's tax returns or other partnership records. The only financial information petitioner received from Durham was a Schedule K-1, Partner's Share of Income, Credits, Deductions, Etc., issued for each taxable year 1989, 1990, and 1991. Petitioner had no "idea what the numbers on the [Schedule] K-1 entailed."

---

[6] Durham is similar to the cattle-breeding partnership at issue in the Court's opinion in Durham Farms #1, J.V. v. Commissioner, supra.

[7] For instance, one of petitioner's tax returns listed his Hoyt partnership investment as Poison Creek. After an inquiry with Hoyt, petitioner was told that "it doesn't make any difference. It's all the same." Petitioner added that "It was so convoluted that it was hard to figure out what was going on."

Before his Hoyt investment, petitioner had always prepared his own tax returns. As a Hoyt investor, petitioner chose to have his tax returns prepared by Laguna Tax Service, a Hoyt organization.

On April 15, 1990, petitioner filed a 1989 Federal income tax return and reported wage and business income of $10,898 and $95,674, respectively. Durham issued petitioner a Schedule K-1 for the period ending September 30, 1989, which reported $81,440 as petitioner's distributive share of Durham's ordinary loss. On a Schedule E, Supplemental Income and Loss, attached to his 1989 return, petitioner reported a partnership loss of $81,440.

During 1991, petitioner claimed and received refunds of $14,607 and $16,998 for the taxable years 1987 and 1988, respectively, as a result of carrying back the 1989 loss from Durham to these prior taxable years.

In a notice of beginning of administrative proceeding (NBAP) dated February 19, 1991, respondent notified petitioner that Durham's 1989 taxable year would be examined.

On April 29, 1991, petitioner filed a 1990 Federal income tax return which reported business income of $52,941. Durham issued petitioner a Schedule K-1 for the period ending September 30, 1990, which reported $175,560 as petitioner's distributive

share of Durham's ordinary loss.  Attached to the Schedule K-1 was a Form 8271, Investor Reporting of Tax Shelter Registration Number, which identified Durham as a tax shelter.  On a Schedule E attached to his 1990 return, petitioner reported a partnership loss of $175,560.

During July 1991, petitioner traveled to Burns, Oregon, to tour several Hoyt ranches.  Petitioner did not review any Hoyt records during his 4-day visit.  During his visit to the Hoyt ranches, petitioner saw "just a handful" of cattle.  Petitioner was unable to determine which cattle, if any, were specifically owned by Durham.

On February 3, 1992, respondent sent to petitioner an NBAP which notified petitioner that Durham's 1990 taxable year was under examination.

On February 11, 1992, Revenue Agent Norm Johnson sent petitioner a letter.  The letter noted, in part, that in prior correspondence sent by Mr. Hoyt in January 1992 to petitioner and other Hoyt investors, "misleading and/or inaccurate premises were made which may directly affect you and your decision-making process in filing your 1991 individual tax return."[8]  The revenue agent's letter further stated that if petitioner was confused by, or questioned the accuracy of, the information provided by

_____

[8]  Mr. Hoyt's letter to the Hoyt investors addressed arguments with respect to material participation under sec. 469.

respondent, then petitioner should "consider having an independent accountant or attorney review this matter".

On March 6, 1992, respondent sent to petitioner a letter which again informed petitioner that Durham was under examination for the 1989 taxable year. The letter further stated that "any adjustments proposed to this entity could have a tax effect to your return".

On May 15, 1992, petitioner filed his 1991 Federal income tax return and reported business income and income on Schedule F, Profit or Loss From Farming, of $54,347 and $51,657, respectively. Durham issued petitioner a Schedule K-1 for the period ending September 30, 1991, which reported $94,050 as petitioner's distributive share of the ordinary loss from Durham. Attached to the Schedule K-1 was a Form 8271 which identified Durham as a tax shelter. On a Schedule E attached to the 1991 return, petitioner reported a partnership loss of $94,050. Petitioner also claimed an individual retirement account deduction of $2,000 on his 1991 return which was related to his Hoyt investment.

On May 1, 1995, respondent issued a notice of final partnership administrative adjustment (FPAA) to the tax matters partner, as well as to petitioner, with respect to Durham's 1991 taxable year. The FPAA determined that Durham had failed to substantiate many of its claimed deductions. These deductions

were subsequently disallowed partnership deductions which totaled $3,055,313. The petition filed at docket No. 7714-96 by the tax matters partner in response to the FPAA issued to Durham for the taxable year 1991 was untimely. Accordingly, the case was dismissed, and by an assessment made in September 1996, respondent increased petitioner's 1991 Federal income tax liability by $42,057. In a notice of deficiency dated September 9, 1996, respondent determined that petitioner is liable for a section 6662(a) accuracy-related penalty of $8,411 for 1991.[9]

## Discussion

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) because of negligence or disregard of rules or regulations under section 6662(b)(1) or, in the alternative, a substantial understatement of income tax under section 6662(b)(2). Respondent's determination with respect to the imposition of the section 6662(a) penalty is presumed correct, and petitioner bears the burden of proving that he is not liable for the accuracy-related penalty under section 6662(a).[10] See Rule 142(a); Welch v.

---

[9] Respondent concedes that a portion of the partnership adjustment is not subject to the accuracy-related penalty.

[10] Sec. 7491 is not applicable in this case because the examination of petitioner's 1991 return commenced before July 22, 1998, the effective date of sec. 7491.

Helvering, 290 U.S. 111, 115 (1933); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax. Sec. 6662(a), (b)(1) and (2).

Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence includes any failure to make a reasonable attempt to comply with the law. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Section 1.6662-3(b)(1), Income Tax Regs., provides that negligence is strongly indicated where "A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances". "Disregard" has been described as any careless, reckless, or intentional disregard. Sec. 6662(c).

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. The determination of

whether a taxpayer acted with reasonable cause and in good faith within the meaning of section 6664(c)(1) is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id. Section 1.6664-4(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge and education of the taxpayer." See Neely v. Commissioner, supra. Reliance by the taxpayer on the advice of a qualified adviser will constitute reasonable cause and good faith if, under all of the facts and circumstances, the reliance by the taxpayer was reasonable and the taxpayer acted in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs.

We consider "the reasonableness of the taxpayer's actions in light of his experience and the nature of the investment." Fawson v. Commissioner, T.C. Memo. 2000-195; see also Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973); Greene v. Commissioner, T.C. Memo. 1998-101, affd. without published opinion 187 F.3d 629 (4th Cir. 1999); Glassley v. Commissioner, T.C. Memo. 1996-206. Whether a taxpayer is negligent in claiming a tax deduction "depends upon both the legitimacy of the

underlying investment and due care in the claiming of the deduction." Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217; Greene v. Commissioner, supra. "When an investment has such obviously suspect tax claims as to put a reasonable taxpayer under a duty of inquiry, a good faith investigation of the underlying viability, financial structure, and economics of the investment is required." Roberson v. Commissioner, T.C. Memo. 1996-335 (citing LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991)), affd. without published opinion 142 F.3d 435 (6th Cir. 1998); Horn v. Commissioner, 90 T.C. 908, 942 (1988).

Petitioner contends that he is not liable for the section 6662(a) accuracy-related penalty because he had reasonable cause to believe that his claimed tax treatment with respect to his Hoyt investment was proper. Petitioner specifically argues that at the time he filed his 1991 return, he reasonably relied on the Court's opinion in Bales v. Commissioner, T.C. Memo. 1989-568, as substantial authority for the tax treatment of the partnership items.[11]

---

[11] We note that there is no explicit "substantial authority" exception to the sec. 6662(a) accuracy-related penalty for negligence. Hillman v. Commissioner, T.C. Memo. 1999-255 n.14 (citing Wheeler v. Commissioner, T.C. Memo. 1999-56).

Petitioner is a well-educated individual who holds an undergraduate degree in nuclear engineering as well as an MBA. However, petitioner had no knowledge with respect to cattle businesses before his Hoyt investment. Petitioner did not seek professional legal or tax advice before his Hoyt investment. Instead, petitioner relied on Hoyt promotional materials that included articles titled "The 1,000 lbs. Tax Shelter" and "Harvesting the Tax Code" and which stated that partnership earnings from various Hoyt partnerships were "tax free" and "sheltered from income tax".

Before filing his 1991 return petitioner received two separate notices from respondent that Durham was under examination for the taxable years 1989 and 1990. In a separate letter, respondent specifically informed petitioner that the examination of Durham "could have a tax effect to your return". Petitioner also received a letter from respondent before filing his 1991 return which stated that information which had been previously sent to investors from Mr. Hoyt was "misleading and/or inaccurate" and that petitioner should "consider having an independent accountant or attorney review this matter". Despite these notices, petitioner did not make any inquiries with respect to his Hoyt investment or have his 1991 return prepared or reviewed by an independent tax professional.

As a result of his Hoyt investment, on his 1991 Federal income tax return petitioner claimed a $94,050 loss from Durham. Petitioner had previously claimed losses from Durham of $81,440 and $175,560, respectively, on his 1989 and 1990 returns. However, petitioner's sole cash contribution to Durham was $17,500. Considering the size of petitioner's investment and the disproportionately large losses generated by the partnership, further investigation was warranted. See Todaro v. Commissioner, T.C. Memo. 1995-398. As previously stated, petitioner made no such investigation. The fact that petitioner was able to claim in 1991 alone a loss that was five times his original investment was enough to have put petitioner on "'notice that the investment was primarily for a tax purpose.'" Greene v. Commissioner, supra. The amount of the losses petitioner claimed in 1991 and prior years compared to the amount of his Hoyt investment created a situation that was "too good to be true" within the meaning of section 1.6662-3(b)(1)(ii), Income Tax Regs.

Finally, petitioner's reliance on Bales v. Commissioner, supra, is misplaced. Petitioner knew that the opinion generally involved the taxable years 1977 through 1979. Petitioner also knew that the Bales opinion did not deal with Durham, his specific Hoyt partnership investment. While petitioner received the opinion, there is no evidence that he personally relied upon the opinion in taking the positions on his 1991 return. Instead,

the record reflects that petitioner relied on the representations of the Hoyt organization with respect to his Hoyt investment and the preparation of his 1991 return.[12]

The Bales case involved different investors, different partnerships, different taxable years, and different issues from those underlying the present case. Additionally, this Court has noted that by the 1980s the Hoyt organization's cattle-management and record-keeping practices changed dramatically. See Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003).

_____

[12] While petitioner refers to the fraud and deceit of Mr. Hoyt with respect to his Hoyt partnership investment, he does not specifically argue that Mr. Hoyt's fraud is a reasonable cause for his tax return positions. Nevertheless, we note that good faith reliance on professional advice concerning tax laws may be a defense to the negligence penalty. United States v. Boyle, 469 U.S. 241, 250-251 (1985). However, it is also well established that taxpayers generally cannot "reasonably rely" on the professional advice of a tax shelter promoter. See Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98 (2000) ("Reliance may be unreasonable when it is placed upon insiders, promoters, or their offering materials, or when the person relied upon has an inherent conflict of interest that the taxpayer knew or should have known about."), affd. 299 F.3d 221 (3d Cir. 2002); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991). Such reliance is especially unreasonable when the advice would seem to a reasonable person to be "'too good to be true'". Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181; Elliott v. Commissioner, 90 T.C. 960, 974 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). Nevertheless, we note that for the reasons discussed above, including petitioner's failure to make any independent inquiry or investigation into the Hoyt partnerships, any reliance by petitioner on the Hoyt organization or its representatives was objectively unreasonable.

As we noted in <u>Hansen v. Commissioner</u>, T.C. Memo. 2004-269:

adopting [petitioner's] position would imply that taxpayers should have been given carte blanche to invest in partnerships promoted by Mr. Hoyt, merely because Mr. Hoyt had previously engaged in activities which withstood one type of challenge by the Commissioner, no matter how illegitimate the partnerships had become or how unreasonable the taxpayers were in making investments therein and claiming the tax benefits that Mr. Hoyt promised would ensue.

Consequently, we reject petitioner's claim that at the time he filed his 1991 return, <u>Bales v. Commissioner</u>, T.C. Memo. 1989-568, provided support for the positions taken on that return with respect to his Hoyt investment.

We find that petitioner has failed to show that he was not negligent with respect to the underpayment for the taxable year at issue. We further find that petitioner has failed to show that he acted with reasonable cause, or in good faith, with respect to such underpayment. Accordingly, we find that petitioner has failed to establish that he is not liable for the accuracy-related penalty under section 6662(a) for the taxable year at issue.[13]

---

[13] We have found that petitioner is liable for the taxable year at issue for the accuracy-related penalty under sec. 6662(a) because of negligence or disregard of rules or regulations under sec. 6662(b)(1). In light of that finding, we need not address respondent's alternative argument that petitioner is liable for the taxable year at issue for the accuracy-related penalty under sec. 6662(a) because of a substantial understatement of income tax under sec. 6662(b)(2).

To reflect the foregoing,

<u>Decision will be entered
under Rule 155</u>.